21519

**In the Matter of Alan Joel DAVIS, Respondent.**
(280 S. E. (2d) 644)

*Atty. Gen. Daniel R. McLeod* and *Senior Asst. Atty. Gen. Richard B. Kale, Jr.,* Columbia, *for complainant.*

*W. Thomas Vernon,* Columbia, *for respondent.*

July 20, 1981.

*Per Curiam:*

This matter is before the court because the Board of Commissioners on Grievances and Discipline found respondent Alan Joel Davis guilty of misconduct as an attorney and recommended that he be publicly reprimanded. There are four

sanctions set forth in our Rules dealing with misconduct: (1) private reprimand, (2) public reprimand, (3) indefinite suspension, and (4) disbarment. Misconduuct is admitted. The sole issue before the court is a determination of the proper sanction. Respondent submits that the sanction should not be more severe than a public reprimand.

The three-man panel which heard the case found the conduct of the respondent to be ". . . quite serious and in fact inexcusable; . . ." It recommended a public reprimand.

The five-man Executive Committee, which under our rules reviews the action of the panel, acquiesced in a public reprimand by a vote of 4 to 1. One of the four believed that public reprimand was not sufficiently severe but indefinite suspension was too severe. The member opposing a public reprimand voted to adopt the panel's finding of fact and conclusions of law, but favored indefinite suspension.

Under our well-established precedent, we may give weight to, but are not bound by, the recommendation of the hearing panel or the reviewing Executive Committee, *Burns v. Clayton*, 237 S. C. 316, 117 S. E. (2d) 300 (1960).

Before discussing the merits of the case, we point out that prior to the initiation of this proceeding, the respondent had been issued a letter of caution by the Board on April 16, 1978, after a complaint had been filed against him. Again, on June 1, 1979, a second letter of caution was issued relative to another complaint. While such letters are not authorized under our rules, we think that the fact they had been issued is proper for our consideration in determining a proper sanction. These letters are not appropriate except in cases wherein the Executive Committee, in initially reviewing a complaint, finds that there is probable cause to file a formal charge and complaint for trial by a panel in the usual fashion.

The pleadings are correctly summarized by the panel as follows:

"The Complaint alleges that the Respondent committed acts of misconduct including neglect of legal matters entrusted to him, making false statements of facts, engaging in conduct involving dishonesty, fraud, deceit and/or misrepresentation, and engaging in conduct that adversely reflects on his fitness to practice law. The Respondent answered by admitting the specified acts of misconduct, the neglect of legal matters entrusted to him, and in certain instances the misrepresentation of facts; further, the Respondent admitted violation of the Code of Professional Responsibility and the Rule of Disciplinary Procedure but set forth matter in mitigation."

The respondent's practice of law is in large measure devoted to the collection of commercial accounts. The seven allegations of misconduct alleged in the complaint and admitted in the answer may be summarized as follows:

(1) On August 3, 1978, respondent was retained by Southern Fabricating Co., Inc. to recover $10,000.12 from Sabel Iron Works. He was paid a $500 fee plus costs. On several occasions he advised his client by letter that a suit had been brought and that a money judgment could be expected soon. In fact, he never filed any action, and no monies were collected.

(2) On September 3, 1975, respondent was retained by Kuff Mercantile Agency, as agent for Firemans Fund American Insurance Co., to recover $1,878.00 owed by N. Goldberg Co., Inc. for insurance premiums. He was paid $150 attorney fee plus costs. He advised his client on different occasions by letter that suit had been brought but that trial was delayed because of a heavily backlogged court docket. In fact, no suit was ever filed, and, after about 4 years delay, respondent was discharged and new counsel employed.

(3) On September 23, 1975, respondent was retained by Kuff Mercantile Agency as agent for General Business Services, Inc., to recover $3,324.48 owed by Gerald W.

Vevon. He was paid $300 attorney fee plus costs. Thereafter, he reported by letter to his client that a complaint had been served, an appearance made for Mr. Vevon, and a motion for summary judgment filed. In fact, he never filed any suit, and, after approximately 4 years delay, he was discharged and new counsel retained.

(4) On January 25, 1977, respondent was retained by Kuff Mercantile Agency, as agent for General Business Services, Inc. to recover $7,163.92 from John F. Hall. The client paid $380 attorney fee plus suit costs. Thereafter, respondent informed his client by letter that suit had been instituted but because of a heavily backlogged court docket the case would not be reached for some time. In fact, suit was never filed and, after 2½ years, the client discharged respondent and retained new counsel.

(5) On March 16, 1977, respondent was retained by Associates Capital Services Corporation to handle a claim and delivery action involving $4,461.52 against Paul Jacobs. He was paid an attorney fee of $350 plus costs. Thereafter respondent informed his client by letter that delays in instituting the case were caused by the failure of the sheriff of Horry County to serve papers on Mr. Jacobs. In fact, respondent never sent the sheriff any papers and, after approximately 2½ years, the respondent was discharged and new counsel retained.

(6) On January 12, 1976, respondent was retained to represent National Equipment Rental, Ltd. for the purpose of having executed in South Carolina two New York judgments in the amounts of $7,473.43 and $8,931.38 against Edward and Janet Gilliland. Respondent was paid a retainer of $500 plus costs. Thereafter, respondent informed his client's New York attorney by letter that suit had been brought and that he was attempting to get a motion for summary judgment granted. In fact, no suit was filed and, after some 3½ years, respondent was discharged and new counsel retained.

(7) On November 23, 1970, respondent was retained by Allied Co., Inc. to recover $1,600.00 owed by Stuart Parkman. A summons and complaint were served March 11, 1971, and an answer received May 6, 1971. The case was stricken from from the trial roster on March 13, 1972, because no attorney appeared to represent the plaintiff. Respondent took no action in the case between 1972 and 1976, advising his client in letters that the case could not be reached because of a heavily backlogged docket in Edgefield County. Respondent took no action to restore the case to the docket and, after approximately 8½ years of delays, he was discharged and new counsel retained.

There was before the panel and the Executive Committee, and is now before this Court the correspondence between the respondent and his respective clients and/or forwarding attorneys who represented these clients in other states. The correspondence involved in each case is voluminous. Respondent was constantly prodded in each case to take some action and persistently . requested to give progress reports. Answers to the inquiries were usually greatly delayed and the excuses given over his signatuure for failing to act were not only oftentimes completely false, but also so illogical that the forwarding clients should have been alerted to relieve him as counsel much earlier than was the case. Many of the excuses recited in respondent's letters were childish in nature.

The gravamen of respondent's position is that even though misconduct is admitted, mitigating circumstances warrant a punishment no more severe than a public reprimand. In essence, he submits that he has served his community well and that because of attempting to attend to more business than he was capable of handling, his clients' affairs were neglected. He argues that he had no intention of ultimately misleading or defrauding anyone. He submits that he now has more support personnel in his office and that his clients' business will not be neglected hereafter. The record reflects that in 1980 his gross income was $142,635.96. To his credit,

refunds of the attorney fees advanced in the seven complaints enumerated above were refunded and transferred to his successor attorney in each case.

It has come to the attention of the court that after the Judicial Reform Constitutional Amendment of 1973, many lawyers and law firms have failed to adjust to the change of pace brought about by the increased business the firms are called upon to attend. Sole practitioners and/or firms simply must adjust to the needs of their law practice. The problem is understandable, but it is of little comfort to a client whose case is neglected.

We are of the opinion that the respondent has violated ■ the following Disciplinary Rules, as set forth in the Code of Professional Responsibility, which has been adopted as a rule of this court:

"DR 6-101—Failing to Act competently.

(A) A lawyer shall not:

(3) Neglect a legal matter entrusted to him.

DR 7-102—Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(5) Knowingly make a false statement of law or fact.

DR 1-102—Misconduct.

(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

We have taken into consideration all of the extenuating circumstances and the testimony of character witnesses favor-

able to the respondent. On the shoulders of this court rests the ultimate responsibility of determining the proper sanction. We are in complete agreement with the panel and the Executive Committee which found the respondent guilty of misconduct however, viewing the showing as a whole, we are of the opinion that a more severe sanction is warranted. While unusual delay, amounting to a total disregard for the rights of a client, might (or might not) be sufficient to warrant an indefinite suspension, repeated false representations over a long period of time to one's own clients cannot be tolerated. An isolated incident is not involved. The pattern of misrepresentations continued over a period of years even after the letters of caution had been issued. It is obvious that the warnings were completely ignored. The argument that there is no showing that the clients have suffered monetary loss has little appeal. Such can be argued, but can never be proved. Debtors, given time, have a way of concealing and disposing of assets such that collection of debts is made impossible. While our ruling need not hinge on whether the clients have or have not suffered loss, it is more logical to assume that loses have been sustained under the facts enumerated herein.

After a review of the entire record, including the correspondence, the undersigned are of the opinion that the proper sanction in this case is indefinite suspension.

The court is in agreement except as to the sanction to be imposed. The sanction is therefore to be found in the concurring and dissenting opinion of Mr. Justice Harwell, concurred in by Justices Ness and Gregory, herewith filed.

NESS, GREGORY and HARWELL, JJ., concur and dissent.

HARWELL, Justice (concurring and dissenting) :

I concur in the finding and recommendation that the respondent be held guilty of misconduct as set forth in our rules, but I am of the view that indefinite sus-

psnsion is not required under the facts of this case. I, therefore, respectfully dissent from that portion of the opinion which would bring about indefinite suspension. I would impose public reprimand as the appropriate sanction.

Inasmuch as two other members of the Court join in this dissent, the ultimate result and order of the Court is that the respondent shall be publicly reprimanded.

NESS and GREGORY, JJ., concur.